IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2012

**STATE OF TENNESSEE v. KEARN WESTON**

**Appeal from the Criminal Court for Shelby County**
**No. 11-02875      James C. Beasley, Jr., Judge**

**No. W2012-00255-CCA-R3-CD - Filed November 30, 2012**

A Shelby County Grand Jury indicted appellant, Kearn Weston, for robbery, a Class C felony. A jury convicted him as indicted, and the trial court sentenced him as a persistent offender to fourteen years in the Tennessee Department of Correction. Appellant challenges the sufficiency of the convicting evidence on appeal. After reviewing the record, the parties' briefs, and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Stephen C. Bush, District Public Defender; Harry E. Sayle III and Lawrence Russell White, Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Kearn Weston.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Kate Edmands, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

This case involved the alleged robbery of the victim when he stopped at a Memphis, Tennessee service station to obtain gasoline for his vehicle. At the October 6, 2011 jury trial, the parties presented the following evidence:

James Black, the victim in this case, testified that on September 15, 2010, between 5:45 p.m. and 6:00 p.m., he stopped at the Exxon station at 3474 Elvis Presley Boulevard to

purchase gasoline for his car. He recalled that it was still daylight when he exited his vehicle at the gas pump, with his gas card in his hand, to begin the fueling process. At that moment, someone hit him from behind on the upper part of his back and shoulder. The victim said he fell onto a steel bolt-like cap covering the pipe to the underground gas tank, breaking a rib. He remembered rolling over and seeing a man, whom he identified as appellant, standing over him saying, "Give me that money, give me that money." The victim, unaware that his wallet had fallen out of his pocket, advised appellant that he did not have any money. Appellant started to turn away and leave until he noticed the victim's wallet lying on the ground. The victim testified that appellant then "snatched" his wallet and "took off running." The victim said that he saw appellant from about four or five feet away when he rolled on the ground after appellant attacked him, and he identified appellant from a photograph lineup at the police station.

On cross-examination, the victim testified that he was wearing glasses at the time of the attack, but he could not remember whether they came off when appellant knocked him to the ground. The victim admitted that he did not see the person who hit him. When he rolled over, he only saw the person for a matter of seconds, and it was two months later when he identified appellant in the photograph lineup.

Marvin Jefferson, who aided the victim after the attack, testified that he was at the Exxon station the evening of this incident and witnessed the attack on the victim. Mr. Jefferson identified appellant as the victim's attacker in a photograph lineup and in the courtroom. He said he was approaching the victim as appellant started to run away. Mr. Jefferson stated, "I ran and jumped in my truck[,] . . . took off behind him[,] and he went eastbound on Winchester." Mr. Jefferson followed appellant for about a block but lost sight of him when appellant entered a path between a hotel and an apartment building.

On cross-examination, Mr. Jefferson testified that he and Kesha Hamilton were in the parking lot at the Exxon station when he observed the attack and robbery of the victim. He recalled hearing the attacker say, "[G]ive me that money," and then seeing the victim "tackled" and falling on his back. After the attack, Mr. Jefferson saw appellant "bent in a squat position" over the victim and heard appellant repeatedly say, "Give me that money." Mr. Jefferson testified that the incident happened really fast. When he said, "[H]ey," and approached the scene, appellant "got up and took off." He further testified that he got into his truck, followed appellant, and noticed appellant had the victim's wallet in his hand as he was running. Mr. Jefferson admitted he was wearing glasses at the time because he had a cataract in his right eye.

On redirect examination, upon being asked if he had any doubt that on September 15, 2010, he saw appellant attacking the victim, Mr. Jefferson replied, "No, I have no doubt in

my mind." He further replied that he had no doubt when the police showed him the photograph lineup two months later and that he had no doubt that day in court.

Kesha Hamilton testified that she was at the Exxon station on September 15, 2010, with Mr. Jefferson and witnessed the incident. Ms. Hamilton stated that she and Mr. Jefferson were talking when a "commotion" diverted their attention to "what looked like an altercation." She observed a person fall down. She also observed the other person pick up a wallet and run across the street. In court, she identified appellant as the perpetrator.

On cross-examination, Ms. Hamilton stated that she was alerted to "loud talking" from other parties in the parking lot and turned to see the victim already on the ground. She said the "other guy was kind of at his feet[,] but he was standing." She testified that Mr. Jefferson yelled, "[H]ey," started walking toward appellant, and that is when appellant "ran off." Mr. Jefferson then jumped in his vehicle and chased appellant across the street.

Elaine Tyler, a former employee of the Exxon station on Elvis Presley Boulevard, testified that she was working on September 15, 2010, and was familiar with appellant because he was a regular customer who would occasionally ask about employment. Ms. Tyler stated that on this day, appellant had been in the store three or four times asking for another sales associate who was not working. She observed appellant in the parking lot "going from car to car . . . soliciting money or whatever." Ms. Tyler testified that appellant came back into the store, and she advised him he would have to leave the premises or she was going to call the police. She stated that appellant called her a name and told her to call the police. At this point, Ms. Tyler called the police and watched appellant from the window when he walked up behind the victim and hit him from behind. She stated that she went out to the victim and again called the police from the victim's cellular telephone. Appellant fled the scene on foot, out of her view. Ms. Tyler testified that the police showed her a photograph lineup, and she identified appellant as the assailant.

Tony Bobo, the manager of the Exxon station, testified that Elaine Tyler called him on the evening of this incident and advised him of the robbery that had occurred. He viewed the exterior surveillance video at the gas station and identified appellant from the video. Mr. Bobo testified that on November 19, 2010, he called the police and spoke with Sergeant Timothy Foster of the Memphis Police Department. He advised Sergeant Foster that the person who robbed the victim had been in the store and was outside waiting at the bus stop. By the time the officers arrived, appellant was already on the bus, which had driven away. Mr. Bobo gave the officers the bus number and the direction in which it was headed.

On cross-examination, Mr. Bobo admitted that he was not at the gas station the day of the incident and did not witness the attack, but after viewing the surveillance video and

speaking with Ms. Tyler, he remembered appellant as a regular customer. Mr. Bobo recalled speaking to the police about the surveillance video the day after the robbery but could not remember whether the police watched it or whether he gave them a copy. He stated they were aware of it.

Memphis Police Officer Quintsontro Irby was on duty November 19, 2010, when he received a call from the dispatcher informing him that the suspect in this incident was boarding a city bus. The dispatcher gave him the bus number and location of the bus. Officer Irby stopped the bus and arrested the suspect matching the given description. Officer Irby identified appellant as the person he arrested.

Appellant presented the testimony of Sergeant Timothy Foster in his defense. Sergeant Foster testified that he was assigned to the robbery unit in September 2010 and was the case officer for this incident. He recalled going to the Exxon station to ask about a surveillance video. Another officer obtained the video later, but the video had since been misplaced and was unavailable. Sergeant Foster said he documented the conversations and events that took place in his supplemental report to accurately testify. When questioned about his documentation regarding Ms. Hamilton's observation point during the robbery, he stated that Ms. Hamilton informed him she witnessed the incident from across the street at the First Tennessee Bank parking lot.

On cross-examination, Sergeant Foster admitted his desk work environment is chaotic at times, and it was possible for him to mistype or misstate what somebody told him in his report. He testified that the police searched extensively for the surveillance video.

After hearing the evidence, the jury convicted appellant as charged. The trial court sentenced appellant as a persistent offender to fourteen years in the Tennessee Department of Correction.

## II. Analysis

On appeal, appellant argues that the evidence was insufficient to convict him. Specifically, he contends that the evidence "was not sufficient to establish beyond a reasonable doubt" that he took the victim's wallet by force[1] and that "the testimony of witnesses [was] rife with inconsistencies [that] raise reasonable doubt" that appellant was the victim's attacker. The State responds that the evidence was sufficient to support appellant's conviction. We agree with the State.

---

[1]Appellant was indicted for taking the victim's wallet by violence or putting the victim in fear, and the jury was properly charged.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2010). "The use of violence or fear must precede or be contemporaneous with the taking of property from the person to constitute the offense of robbery." *State v. Owens*, 20 S.W.3d 634, 641 (Tenn. 2000). The relevant factor in determining if a robbery occurred is "the temporal proximity between the taking of property and the use of violence or fear." *State v. Swift*, 308 S.W.3d 827, 828 (Tenn. 2010).

Appellant claims that he "had begun to walk away after knocking [the victim] down and being told that [the victim] had no money, essentially abandoning the robbery." He

further claims that he simply "noticed the wallet on the ground, . . . picked it up[,] and ran." However, the evidence presented at trial belies appellant's claims. Viewed in the light most favorable to the State, the evidence shows that appellant hit the victim from behind, knocking him to the ground, which caused the victim to fall and break a rib. Appellant repeatedly told the victim, "[G]ive me that money." Appellant, believing that the victim did not have any money, started to leave. However, before leaving the scene, appellant noticed that the victim's wallet had fallen out of his pocket. Appellant grabbed the victim's wallet, and ran. The evidence is clear that appellant committed the theft of the victim's wallet by violence that occurred nearly immediately before the taking of the wallet. While appellant may not have taken the wallet in the original manner in which he intended, it is clear that appellant intended to use violence against the victim in order to take the victim's money. Appellant succeeded in committing the theft of the victim's wallet as a result of his violence toward the victim.

Appellant further posits that the evidence was insufficient because of inconsistencies in the witnesses' testimonies. In his brief, appellant does not identify any inconsistencies in the testimony nor does he explain how any inconsistencies would have prevented a reasonable trier of fact from finding the essential elements of the offense beyond a reasonable doubt. Moreover, the jury is the finder of fact in a jury trial and resolves all questions involving the credibility of witnesses, the weight and value to be given the evidence, and factual disputes raised by the evidence. *Bland*, 958 S.W.2d at 659; *Pruett*, 788 S.W.2d at 561. Several eyewitnesses identified appellant as the person who knocked the victim to the ground, stole his wallet, and fled. The jury heard any alleged inconsistencies, and by their guilty verdict, they obviously resolved all conflicts in the testimony in favor of the State. *Cabbage*, 571 S.W.2d at 835. Appellant's arguments are without merit, and he is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE